UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

A.R. on behalf of F.P.,                                          :

                                Plaintiff,          :          12 Civ. 4493 (PAC)

      -against-                                            :          OPINION & ORDER

NEW YORK CITY DEPARTMENT OF
EDUCATION,                                                       :

                          Defendant.          :

--------------------------------------------------------x


HONORABLE PAUL A. CROTTY, United States District Judge:

        Plaintiff A.R. brings this action on behalf her daughter, F.P. ("Student"), against the New

York City Department of Education (the "DOE"), seeking direct payment of the Student's

private school tuition for the 2010–11 school year as a remedy for the DOE's undisputed failure

to offer the Student a free appropriate public education ("FAPE") as required by the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*  Since the DOE failed to

offer a FAPE, the Plaintiff had a right to place the disabled child in an appropriate learning

setting and to seek DOE funding for tuition for the private placement, if equitable considerations

support such funding.

        Plaintiff sought that funding, but the DOE's Impartial Hearing Officer ("IHO") found

that Plaintiff's placement of the Student at Cooke Center for Learning and Development

("Cooke") was inappropriate.  In any event, the IHO reasoned, the request for tuition had to be

rejected because it was unsupported by equitable considerations.  On appeal to the New York

State Education Department's State Review Officer ("SRO"), the SRO reversed the IHO's

finding that the Student's placement at Cooke was inappropriate, but concurred with the IHO's determination that the request for tuition was not supported by equitable considerations.

For the reasons set forth below, the Court affirms the SRO's determination that the Student's placement at Cooke was appropriate. Further, the Court reverses both the IHO and SRO on the issue of funding and finds that equitable considerations fully support ordering DOE to make a retroactive direct tuition payment for the Student's placement at Cooke. Accordingly, the Court grants Plaintiff's motion for summary judgment and denies Defendant's cross motion.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The Student turned eleven years old in October 2010. She is learning disabled and is speech and language impaired. There is no dispute that she has "a history of severe receptive/expressive and language processing issues, which negatively impacted her overall academic and social/emotional development." (Pl.'s R. 56.1 Stmt. ¶ 2.) Her "language difficulties interfered with her ability to grasp information taught in the classroom, particularly her ability to decode, which, in turn, resulted in attentional difficulties, anxiety attacks, and damage to [her] confidence and self-esteem, further impeding the learning process." (*Id.* ¶ 3 (citations omitted).) Accordingly, the parties agree that the Student is a "child with a disability" as defined by the IDEA, 20 U.S.C. § 1401(3). At home, the Student speaks Spanish with her mother, the Plaintiff, whose English language skills are poor. In the 2008–09 and 2009–10

---

[1] The facts described herein are derived from the parties' Rule 56.1 statements, their briefs, the administrative record of the DOE's Impartial Hearing Officer ("IHO") and the New York State Education Department's State Review Office ("SRO"), and Plaintiff's exhibits. Plaintiff's exhibits in the administrative proceedings are cited herein as "Pl.'s Ex. _," while her Declaration and exhibit submitted to this Court is cited as "Pl.'s Decl. Ex. 1." These facts are undisputed unless otherwise indicated.

school years, the Student was enrolled at Cooke,[2] which is "a non-State approved private school in Manhattan that is designed primarily to educate students with speech/language, communication disorders, and learning disabilities."  (Pl.'s R. 56.1 Stmt. ¶ 7.)

On March 12, 2010, Plaintiff signed an enrollment contract with Cooke for the 2010–11 school year.  The contract provided that the tuition would be $44,500 and that Plaintiff "acknowledge[d] that [she] [is] responsible for full payment of the tuition due under this contract."  (Pl.'s Ex. M. § 2.a)  The contract further provided that full payment was due on September 30, 2010, but that "the Cooke Center will permit payment of the tuition owed under this contract to be delayed beyond the due date in the event that [Plaintiff] undertake[s] to pursue [her] due process rights to seek direct or 'prospective' tuition funding from the [DOE] under applicable law."  (*Id.* § 8.b.–c.)  Plaintiff agreed that in the event that she pursued funding from DOE, she would "take all necessary steps to secure such funding as promptly as possible and to cooperate fully in the process required to secure such funding."  (*Id.* § 9.a.[3])  The contract also stated that Plaintiff would be "released from this contract without financial penalty or continuing responsibility for tuition payments . . . should [she] choose to accept a school placement recommended by the [DOE]," provided that she notify Cooke of her intention to do so by October 31, 2010, and that she would be responsible for only a pro-rated tuition amount if she gave notice after that date.  (*Id.* § 10.b.)  Finally, the contract stated that Cooke's failure to enforce its rights under the contract would not waive those rights or its ability to enforce them

---

[2] The appropriateness of the Student's placement at Cooke in prior years is not at issue in this case, and the Court has not considered the source of the funding for those years in assessing the merit of Plaintiff's claims in this case. *See* Fed. R. Evid. 408 (evidence of settlements is inadmissible to show liability for a disputed claim or for impeachment).  The references herein to prior years are for context and background purposes only.

[3] Citations herein to "§ 9" of the contract refer to the section in between sections 8 and 10, which is apparently misnumbered as "3."

later.  (*Id.* § 11.)

After signing that contract, Plaintiff attended a meeting of the DOE's Committee on Special Education ("CSE") on May 24, 2010 to develop an Individualized Education Plan ("IEP") for the Student.  While the IEP assessed the Student's performance, set forth goals for her development, and recommended a "special class with related services," it did not recommend a particular school placement for her.  (Pl.'s Ex. J.)

Later that summer, on August 24, Plaintiff's counsel sent a letter to the CSE stating that the DOE had "failed to offer [the Student] an appropriate program for the 2010-2011 school year" and that the Plaintiff intended to enroll the Student at Cooke for that school year and seek payment from DOE to cover the tuition.  (Pl.'s Ex. F.)  Apparently later that same day,[4] Plaintiff received a Final Notice of Recommendation ("FNR") from DOE assigning the Student to a classroom in J.H.S. 131 in the Bronx.  On August 27, Plaintiff's counsel sent a letter in response to the FNR, stating that a "12:1 classroom is unlikely to provide the necessary attention and support to enable [the Student] to progress," that Plaintiff would be "unable to observe the classroom until after the start of school on September 8," and that pending her visit to J.H.S. 131 to make an assessment, she would enroll the Student at Cooke.  (Pl.'s Ex. E.)  On October 5, Plaintiff's counsel sent a letter to the CSE stating that Plaintiff had visited the recommended placement at J.H.S. 131 on October 1 and that she had decided to keep the Student enrolled at Cooke because the recommended placement was inappropriate.  (Pl.'s Ex. D.)

DOE concedes that it did not offer the Student a FAPE for the 2010–11 school year.  (Def.'s R. 56.1 Stmt. ¶ 5 n.1 (citing IHO Hr'g Tr. 7).)

---

[4] There is some ambiguity in the record about whether the FNR was merely *dated* or also actually *received* on August 24.  In any event, the parties appear to agree that Plaintiff received the FNR soon *after* sending her August 24 letter.  (*See* Pl.'s Mot. 5; Def.'s Opp'n 16.)  The FNR itself is not part of the record.

The following year, on August 12, 2011, Plaintiff sent the DOE a request for an impartial hearing on her claim for direct payment of the Student's 2010–11 tuition at Cooke. (Pl.'s Ex. A.) That hearing took place on November 9, 2011, and the IHO issued a decision on November 30, denying Plaintiff's claims on the grounds that she had not established that Cooke was an appropriate placement and that equitable considerations did not favor granting her relief. (IHO Dec. 14.) On January 4, 2012, Plaintiff appealed the IHO's decision to the SRO. On March 19, 2012, the SRO reversed the IHO's finding that Plaintiff's "unilateral placement of the student at Cooke" was inappropriate (SRO Dec. 7, 17) but affirmed the IHO's decision on the grounds that "equitable considerations did not support the Plaintiff's claim" (SRO Dec. 14).

On June 8, 2012, Plaintiff filed a Complaint in this Court appealing the SRO's decision. The parties' cross-motions for summary judgment were fully briefed on April 15, 2013.

## DISCUSSION

I.      **Legal Standards for IDEA Claims**

A.      **Statutory Framework**

The IDEA mandates a FAPE for children with disabilities, *see* 20 U.S.C. § 1400(d)(1)(A), to be "provided in conformity with" an IEP, 20 U.S.C. § 1401(9). To ensure compliance, *see* 20 U.S.C. § 1415, "New York State has implemented a two-tier system of administrative review." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160 (2d Cir. 2004). "At the first level of review, an impartial hearing officer ('IHO') appointed by the local board of education conducts a due process hearing." *M.M. ex rel. J.M. v. New York City Dep't of Educ.*, No. 09-CV-5236, 2010 WL 2985477, *2 (S.D.N.Y. July 27, 2010); *see* N.Y. Educ. Law § 4404(1). "Following the decision of the IHO, an aggrieved party may appeal to a state review officer ('SRO')." *M.M.*, 2010 WL 2985477, at *2. "After

exhausting this two-step administrative process, any party still aggrieved may bring a civil action challenging the decision in federal or state court." *R.B. v. New York City Dep't of Educ.*, 713 F. Supp. 2d 235, 238 (S.D.N.Y. 2010) (citing 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3)).

"[W]hen a public school fails to provide a FAPE and a child's parents place the child in an appropriate private school without the school district's consent, a court may require the district to reimburse the parents for the cost of the private education." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 232 (2009). But parents "do so at their own financial risk. If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents [are] barred from obtaining reimbursement." *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 374 (1985). Parents are entitled to reimbursement if they "can establish the three so-called '*Burlington–Carter*' factors: (1) that the educational program recommended by the IEP was inappropriate to meet the child's needs; (2) that the alternative placement selected by the parents was appropriate; and (3) that equitable factors weigh in favor of reimbursement." *B.R. ex rel. K.O. v. New York City Dep't of Educ.*, 910 F. Supp. 2d 670, 673 (S.D.N.Y. 2012); *see Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15–16 (1993); *Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370, 374 (1985)).

The District Court has "'broad discretion' to 'grant such relief as . . . is appropriate' under [20 U.S.C.] § 1415(i)(2)(C)(iii)," including the award of "retroactive direct payment of private school tuition." *Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 427 (S.D.N.Y. 2011) (citing cases); *accord P.K. ex rel. S.K. v. New York City Dep't of Educ.*, 819 F. Supp. 2d 90, 118 (E.D.N.Y. 2011) *aff'd,* No.11-3525, 2013 WL 2158587 (2d Cir. May 21, 2013). Thus, "[w]here . . . parents lack the financial resources to 'front' the costs of

6

private school tuition, and in the rare instance where a private school is willing to enroll the student and take the risk that the parents will not be able to pay tuition costs—or will take years to do so—parents who satisfy the *Burlington* factors have a right to retroactive direct tuition payment relief." *Mr. & Mrs. A.*, 769 F. Supp. 2d at 428.

### B.    Standard of Review

"While an IDEA appeal is in the form of a summary judgment motion, the existence of a genuine issue of material fact will not result in a denial." *Bettinger v. New York City Bd. of Educ.*, 06-CV-6889, 2007 WL 4208560, at *4 (S.D.N.Y. Nov. 20, 2007). "Though the parties in an IDEA action may call the procedure 'a motion for summary judgment,' the procedure is in substance an appeal from an administrative determination, not a summary judgment [motion]." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012). "Instead, the federal court reviewing an administrative decision under IDEA bases its decision on an independent review of the record using a 'preponderance of the evidence' standard." *Bettinger*, 2007 WL 4208560 at *5; *see* 20 U.S.C. § 1415(i)(2)(C)(iii). In addition, the reviewing court "shall hear additional evidence at the request of a party," 20 U.S.C. § 1415(i)(2)(C)(2), although some courts have stated that they retain discretion on whether to take additional evidence and that "a court 'must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.'" *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552, 554 n.1 (S.D.N.Y. 2010) (citing cases), *aff'd*, 486 F. App'x 954 (2d Cir. 2012).

Congress's provision of "independent" judicial review in IDEA cases is not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S.176, 206 (1982). "While federal courts do not simply rubber stamp administrative decisions,

7

they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998) (quoting *Rowley*, 458 U.S. at 206). "Where the IHO and SRO disagree, . . . courts must defer to the reasoned conclusions of the SRO as the final state administrative determination," unless the court "concludes that the SRO's determinations are insufficiently reasoned to merit that deference." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012).

Nonetheless, "[i]f parents meet their burden" on the first two factors of the *Burlington–Carter* analysis (that the student was not offered a FAPE, and the parent placed the student in an appropriate school), "the district court enjoys broad discretion in considering equitable factors relevant to fashioning relief." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007); *see* 20 U.S.C. § 1415(i)(2)(C)(iii) ("[T]he court . . . shall grant such relief as the court determines is appropriate."). Accordingly, "the deference owed to the administrative decisions may be 'less weighty' when it comes to reviewing whether the equities support a reimbursement award"—*i.e.*, the third factor of the *Burlington–Carter* analysis. *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 659 (S.D.N.Y. 2011). That is because "where the issue in dispute is the balancing of the equities, [it is] a matter as to which district courts not only have particular expertise but also broad discretion." *W.M. v. Lakeland Cent. Sch. Dist.*, 783 F. Supp. 2d 497, 504 (S.D.N.Y. 2011).

## II.     Analysis

The DOE's concession that it failed to offer a FAPE to the Student in the 2010–11 school year leaves but two issues before the Court:  whether the Plaintiff's placement of the Student at

Cooke was appropriate, and whether equitable considerations weigh in favor of granting relief to Plaintiff.

> A.   **The SRO's Finding That Cooke Was An Appropriate Placement Is Supported by the Evidence.**

Under the second factor in *Burlington–Carter*, the determination of whether a parent's unilateral placement of a child in a private school is appropriate turns on whether the placement is "reasonably calculated to enable the child to receive educational benefits." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006) (quoting *Rowley*, 458 U.S. at 207 (1982)). In making this determination,

> [n]o one factor is necessarily dispositive . . . . [C]ourts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs.  [P]arents need not show that a private placement furnishes every special service necessary to maximize their child's potential.  They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

*Id.* at 364–65 (citations and quotation marks omitted).

Here, the SRO determined that Cooke was an appropriate placement for the Student in 2010–11, reversing the contrary finding of the IHO.  The SRO's decision made a thorough review of the educational programs that Cooke offers to meet the "unique needs" of students with disabilities and in particular how those services were "reasonably calculated to enable the child to receive educational benefits."  (*See* SRO Dec. 7–13.)  The SRO determined that, among other things, "the student received individual and group speech-language therapy"; that "Cooke tailors a student's program in order to assess the student's unique needs based on the weaknesses revealed in [periodic formal] assessments"; that "the student was grouped for her academic instruction in a class of ten students whose language abilities were very similar to her own"; that

9

"the student's teachers at Cooke used individualized strategies to address the student's unique academic needs," and that "instruction at Cooke was appropriate for the student's emotional needs." (*Id.* at 8–10.)  The SRO also determined that the Student received "related services," including "40 minutes of speech-language therapy once per week individually and once per week in a group of three" and services to address "the student's needs in the areas of expressive, receptive, and pragmatic language abilities including, among other things, listening skills, processing skills, critical thinking skills, sentence structure and grammar." (*Id.* at 10.)

Having failed to offer a FAPE to the Student as required, the DOE now quibbles that (1) the record did not contain enough detail about exactly how "the Cooke Center curriculum was specifically designed to meet the unique needs of the Student" (Def.'s Mot. 9), (2) the Student was "inappropriately grouped with older students" (*id.* at 10), and (3) the Student received speech-language therapy twice a week instead of three times as recommended in a private evaluation (*id.* at 11-12).  These objections must be rejected.

Giving due deference to the SRO's educational expertise, the Court finds the SRO's determination that Cooke was an appropriate placement is well supported by a preponderance of the evidence.  First, the SRO's decision described numerous aspects of Cooke's education programs that were tailored to the needs of students with learning disabilities in general and to this Student's needs in particular.  The record need not exhaustively explore every detail about precisely how "Cooke modifies its curriculum to address each student's profile" (Def.'s Mot. 8), but rather need only demonstrate that the Student's placement at Cooke was "reasonably calculated to enable the child to receive educational benefits," under the "totality of the circumstances." *Frank G.*, 459 F.3d at 364.

Second, although the Student was grouped with older students, the SRO found that the

"record reflects that the student was enrolled in a 'mixed grade,' 'mixed age' middle school class for special education students," and that "the student's [sic] were grouped in the classroom by academic needs."  (SRO Dec. 8.)  Moreover, as the SRO explained, "the instruction was differentiated to meet the student's individual needs and abilities; and within the classroom, the student was grouped for particular instructional purposes with other students according to the similarity of the students' needs."  (*Id.*)  The evidence in the record of the adaptation of instruction for the Student's ability is sufficient.  "[T]he test for the parents' private placement is that it is appropriate, and not that it is perfect."  *A.D. v. Bd. of Educ. of City Sch. Dist. of City of New York*, 690 F. Supp. 2d 193, 206 (S.D.N.Y. 2010).[5]

Third, the DOE's argument that Cooke was not appropriate for the Student because its "related services" involved speech and language therapy twice a week instead of three times is unpersuasive.  "[P]arents need not show that a private placement furnishes every special service necessary to maximize their child's potential."  *Frank G.*, 459 F.3d at 365.  The evidence and the SRO's reasoning in this case are more than sufficient to "demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped

---

[5] The IHO expressed some concerns about evaluating the appropriateness of Cooke with the benefit of hindsight rather than as a "snapshot" of Cooke's appropriateness prior to the start of the 2010–11 school year.  (IHO Dec. 9–10.)  Nonetheless, both parties and the SRO agree that consideration of what services Cooke actually provided and the Student's progress there are relevant to the *Burlington–Carter* analysis of the appropriateness of the placement.  (See Def.'s Opp'n 4 ("A student's progress, while a factor for the Court to consider, 'does not itself demonstrate that a private placement was appropriate.'"); Pl.'s Mot. 9 (citing the Student's progress at Cooke in various areas during the 2010–11 school year); SRO Dec. 9, 12 (citing educational strategies that Cooke employed and the progress that the Student made during the 2010–11 school year).)  The Second Circuit's decisions on this issue suggest that there is nothing inherently improper in such a retrospective review of a parent's placement decision.  *See Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006) ("Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs."); *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 115 (2d Cir. 2007).

child, supported by such services as are necessary to permit the child to benefit from instruction." *Id.*

Therefore, giving due deference to the educational expertise and the "reasoned conclusions of the SRO as the final state administrative determination," *M.H.*, 685 F.3d at 246, the Court finds that the SRO's determination that Plaintiff's placement of Student in Cooke was appropriate is supported by a preponderance of the evidence. Thus, Plaintiff has satisfied her burden under the second factor of the *Burlington–Carter* analysis.

**B.   Equitable Considerations Favor Granting Relief to Plaintiff.**

Since DOE concedes its failure to offer the Student a FAPE, and the Court has affirmed the SRO's determination that the Cooke placement was appropriate, the Court turns to the final issue: whether the equities support a determination that DOE pay the Student's tuition to Cooke for the 2010–11 school year. The SRO affirmed the IHO's determination that equitable considerations did not favor granting Plaintiff relief on the grounds that Plaintiff's contract with Cooke was a "sham" and that she never "'seriously considered sending [the student] to a public placement' for the 2010–11 school year." (SRO Dec. 14–15 & n.13.) The IHO's discussion of this point appears to be an afterthought, and the SRO's analysis is limited to a paragraph largely deferring to the IHO's decision.[6] The parties, on the other hand, devoted much of their briefing in this Court to this issue.

---

[6] *See* IHO Dec. 11 ("Having found that the parent has not carried the burden on the second criterion, I do not have to consider equity. But I will do so to complete the record in this case.") (citation omitted); SRO Dec. 15 & n.13 (declining to "disturb the IHO's determination" that Plaintiff failed to comply with the contract and including a footnote stating that there was no "basis in the hearing record to overturn the IHO's decision" that Plaintiff never considered sending the Student to a public placement).

12

**1.     The Record Does Not Demonstrate that the Enrollment Contract Was a "Sham."**

The DOE contends that the contract between Plaintiff and Cooke contract was simply a collusive effort to induce payment from the DOE, not an agreement that Plaintiff would actually be liable to pay the Student's tuition.  Concededly, the contract's terms impose an obligation on Plaintiff to pay the tuition, but the DOE contends that the circumstances surrounding the contract indicate that it is a "sham" and thus no contract at all.  (Def.'s Opp'n 8 (citing *Brass Const. v. Muller*, 98-CV-5452, 2001 WL 1131986, at *3 (S.D.N.Y. Sept. 25, 2001)).)  DOE argues that neither Plaintiff nor Cooke intended Plaintiff to be truly bound by the terms of the contract, citing, for example, the fact that Plaintiff never made any payments to Cooke and that Cooke never asked her for payment.  DOE also argues that Plaintiff failed to comply with the contract's requirement that she "take all necessary steps to secure such funding as promptly as possible" as though DOE were a third party beneficiary.  In any event, DOE argues that the claimed breach in the contract's terms indicates that Plaintiff did not consider herself bound by it.

The fact that Plaintiff ultimately expected to prevail in her claims against the DOE does not indicate that she believed that she had no obligation to pay under the contract.  And though the IHO's decision stated that Plaintiff "testified that she was not directly responsible to pay the tuition," (IHO Dec. 13) the transcript itself indicates that her testimony on this point was less than clear.  As the DOE notes regarding this same testimony, the interpreter's translation of the Plaintiff's response was not literal, at least in that it referred to the Plaintiff in the third person. (Def.'s Opp'n 10 n.2.)  The following are two pertinent exchanges from the transcript:

> DR. ELLEN: Okay. And what was your understanding, if you have any, of the contract?
>
> [PLAINTIFF] (through interpreter): My understanding here is that she signs the

contract, that she's not directly responsible of whatever is--okay, she has to pay
the tuition completely, but she doesn't have the responsibility of doing this, but
she'll sign the contract regardless of this and then afterwards she will--she will
arrange any problems that may come with this.

* * * *

HEARING OFFICER EBENSTEIN: Yes. And did you expect to pay anything at
all for it for the 2010/2011 school year?

[PLAINTIFF] (through interpreter): I can't so I mean no.

(Hr'g Tr. 138–39, 148.)

Translation aside, these exchanges are consistent with a belief by Plaintiff that she would

be able to procure DOE funding for the Student's tuition, and that if unsuccessful, she could not

afford to pay the tuition herself.  That alone does not establish that Plaintiff had no legal liability

under the contract or that it was merely a "sham" made to induce funding from DOE.  Moreover,

it would be a grave error to conclude from the fact that Plaintiff did not have the means to pay

for a private placement that her daughter is precluded from receiving the *free* appropriate public

education that the IDEA is intended to guarantee.  *See Mr. & Mrs. A.*, 769 F. Supp. 2d at 427

("[A] child's access to a FAPE cannot be made to depend on his or her family's financial ability

to 'front' the costs of private school tuition.").

Nor does Cooke's failure to demand payment evince a disregard for the contract

sufficient to label it a sham.  Indeed, the contract itself provided that payments would be delayed

in the event that Plaintiff pursued funding from the DOE.  (Pl.'s Ex. M § 8.c.)  To the extent that

Cooke did not fully exercise its rights to demand payment or other compliance with the terms of

the contract, Plaintiff and Cooke had expressly agreed in the contract that such lack of

enforcement would not waive Cooke's rights.  (*Id.* § 11.)

DOE also argues that the lapse of nearly one year between Plaintiff's rejection of DOE's

14

proposed public-school placement and her request for an impartial hearing demonstrates that she did not take seriously her obligation under the contract to "take all necessary steps to secure [DOE] funding as promptly as possible" (Def.'s Opp'n 10 (citing Pl.'s Ex. M § 9.a).)  Plaintiff counters that she pursued her rights well within the two year statute of limitations.  (Pl.'s Opp'n 9.)[7]  But the Court need not decide whether a one-year lapse or other conduct that the DOE cites constitute material breaches of the contract because this action is not a contractual dispute between Plaintiff and Cooke.

DOE attempts to show that Plaintiff's and Cooke's conduct demonstrates that neither was bound by the contact and thus that is a "sham."[8]  The record reflects, however, that Cooke provided an education to the Student with the expectation that Plaintiff would arrange for payment and that Plaintiff, in turn, diligently pursued payment from DOE, including the exhaustion of her administrative remedies and the filing an action in this Court.

Plaintiff's decision to keep her child enrolled in Cooke risked the possibility that she might be denied public funding if Cooke was found to be inappropriate, *Burlington*, 471 U.S. at 374, but Plaintiff's confidence in the merits of her claims does not undermine them, nor does it prove that her contract with Cooke was a sham.  Moreover, Plaintiff's expectation that DOE would be liable to pay, coupled with her recognition that she could not afford do so herself, does not subject her to an adverse inference on the equity of granting her relief.  As the Supreme

---

[7] 20 U.S.C. § 1415(b)(6)(B) provides for a two-year period of limitations that begins to run at the time the parent "knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint . . . , in such time as the State law allows."  New York law, in turn, provides that the period of limitations is two years.  N.Y. Educ. Law § 4404(1).

[8] The DOE and IHO cite *Mr. & Mrs. A.* in support of their "sham" theory, but that case merely noted that if there were evidence that schools and parents were colluding to inflate tuition prices to be charged to DOE, then the reviewing officer or court could reduce the award to a reasonable price.  769 F. Supp. 2d at 430.  There was no evidence of such a scheme in that case nor is there here.

15

Court has made clear, the IDEA "was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives."  *Burlington*, 471 U.S. at 372.

> **2.   The Record Demonstrates Plaintiff's Cooperation in Finding a Public Placement.**

The DOE pretends to have peered into the Plaintiff's mind and ascertained that she "never seriously considered sending the Student to a public placement," and thus concludes that equitable considerations weigh against granting relief.  (Def.'s Opp'n 13.)  Although the DOE concedes that Plaintiff complied the IDEA's requirements by attending the CSE meeting to develop an IEP for the Student and visiting the public school placement that the DOE proposed, the DOE argues that her participation in this process was "insincere[]" and merely intended to fulfill the IDEA's requirements for seeking reimbursement for a private placement.  As Plaintiff points out, however, the facts that DOE cites as evidence of her insincerity demonstrate her cooperation.  Thus, they do not persuade the Court that she had ruled out sending the student to any adequate placement that the DOE might propose.

First, the fact that Plaintiff signed the enrollment contract with Cooke before having attended the CSE does not demonstrate that she had already made up her mind to reject any recommended public placement.  Indeed, the contract she signed with Cooke specifically provided that she would be "released from this contract without financial penalty or continuing responsibility for tuition payments . . . should [she] choose to accept a school placement recommended by the [DOE] in a public school," provided that she give notice by October 31. (Pl.'s Ex. M § 10.b.)  Particularly in light of this provision, "the Court declines to infer bad faith on the part of the [Plaintiff], who sought to . . . make arrangements to preserve [her] options

16

should the DOE's recommended placement prove to be inadequate." *R.K. ex rel. R.K. v. New York City Dep't of Educ.*, 09-CV-4478, 2011 WL 1131492, at *30 (E.D.N.Y. Jan. 21, 2011); *see also New York City Dep't of Educ. v. S.S.*, 09-CV-810, 2010 WL 983719, at *15 (S.D.N.Y. Mar. 17, 2010) ("[T]he contract allows the parent to withdraw her child at any time should an acceptable placement be forthcoming, without suffering any financial penalty at all!  There is nothing inequitable or collusive about the terms of the agreement between the parent and the private school.").  It was perfectly reasonable for Plaintiff to reserve a spot at Cooke for the Student rather than wait until days before the start of the school year when she received the DOE's recommended placement, which turned out to be undisputedly inadequate.

Nor does the fact that the Plaintiff responded "yes" to the question of whether she "want[ed] to enroll the child" at Cooke when she signed the contract (Def.'s Mot 14 (quoting Hr'g Tr. 148)) demonstrate her bad faith.  Such a view is entirely consistent with a permissible desire to keep the Student enrolled at the same school she had been attending in the last two years, but a willingness to consider other forthcoming proposals from the DOE.  In other words, Plaintiff "made [her] desire to keep [the Student] at [Cooke] known, but did not make it an absolute condition." *B.R. ex rel. K.O. v. New York City Dep't of Educ.*, 910 F. Supp. 2d 670, 680 (S.D.N.Y. 2012).

The DOE also appears to ask the Court to infer that Plaintiff's compliance with the "step-by-step instructions for fulfilling the IDEA's requirements" and her simultaneous pursuit of her claims is somehow evidence of her "obvious intent" to avoid a public-school placement for the Student.  (*See* Def.'s Opp'n 14; Def.'s Mot. 15.)  Indeed, her contract with Cooke obligated her to cooperate with the DOE's efforts to find an appropriate placement for the student, including attending CSE meetings, visiting any proposed placement, and promptly responding to any

17

placement proposal.  (Pl.'s Ex M. § 9.e.)  In addition, as the DOE points out, Plaintiff was well-versed in "navigating the IDEA litigation process" and had retained counsel to assist her in doing so.  (Def.'s Mot. 15.)  But this diligence in fulfilling the IDEA's requirements and pursuing her rights thereunder does not show by itself that Plaintiff's "gestures of cooperation were not genuine" (Def.'s Mot. 15).  *See C.L. v. New York City Dep't of Educ.*, No. 12-CV-1676, 2013 WL 93361, at *9 (S.D.N.Y. Jan. 3, 2013) (concluding that where "the Department itself concedes that plaintiffs 'ostensibly cooperated with the IEP process[,]' . . . . [its] claim rests on mere speculation, and therefore must fail.").  Plaintiff's lack of confidence in the DOE's ability to offer a FAPE does not preclude her from obtaining relief in the event that her fears were realized, as they were here.

The DOE's citation of this Court's opinion in *Bettinger v. New York City Bd. of Educ.*, No. 06-CV-6889, 2007 WL 4208560 (S.D.N.Y. Nov. 20, 2007) does not compel a contrary conclusion.  There, the plaintiffs had cooperated only up to a point, after which their "cooperation ceased."  *Id.* at *7.  Although they cooperated in the formulation of an IEP, they "did not engage with" either of the schools that contacted them about placing their child.  *Id.* Thus, in light of this lack of cooperation and the plaintiffs' failure to "return[] to the CSE to review their status in the placement process, or to express their dissatisfaction with the referrals received," the Court found that they "had already made up their mind" to send their child to their own preferred private school.  *Id.* at *8.  In contrast, here, there is no evidence that Plaintiff ever failed to cooperate with the DOE, declined to visit any proposed placement, or notify the DOE of her dissatisfaction with its proposal.  Therefore, the court finds that a preponderance of the evidence demonstrates Plaintiff's cooperation with the DOE's placement process and that equitable considerations weigh in favor of granting her relief.

### C.   An Order of Retroactive Direct Payment to Cooke Is Appropriate.

The DOE contends that the Court should deny Plaintiff's request for retroactive *direct* payment of the Student's tuition because she did not adequately demonstrate her inability to "front" the costs in the prior administrative hearings, and now that she offers to do so with her declaration, the Court should reject that evidence as improper.

Both parties agree with Judge Gardephe's well-reasoned opinion in *Mr. & Mrs. A.* that a court's "'broad discretion' to 'grant such relief as . . . is appropriate' under [20 U.S.C.] § 1415(i)(2)(C)(iii) includes the power, in a proper case, to award retroactive direct payment of private school tuition."  769 F. Supp. 2d at 427.  This Court agrees that "the exercise of rights under IDEA cannot be made to depend on the financial means of a disabled child's parents."  *Id.* at 428 (reviewing case law).  The DOE objects, however, on the basis that the Plaintiff did not adequately demonstrate her inability to pay the $44,500 tuition in the administrative proceedings.[9]  Both the IHO and SRO likewise cited this as a reason for denying relief, (SRO Dec. 16; IHO Dec. 12) despite Plaintiff's testimony at the hearing that she could not pay the tuition (Hr'g Tr. 148).

In IDEA appeals, "courts generally accept evidence that was not withheld in bad faith, is relevant, and does not change the administrative review into a trial de novo."  *G.B.*, 751 F. Supp. 2d 552, 554 n.1 (S.D.N.Y. 2010) (citing 20 U.S.C. § 1415(i)(2)(C)(ii)).  Accepting Plaintiff's declaration and single exhibit thereto setting forth her lack of financial resources would hardly convert these proceedings into a "trial de novo," and there is no indication that this evidence was

---

[9] The DOE's additional argument that Plaintiff was never "legally obligated" to pay the tuition collapses into its argument that the contract was a "sham" (Def.'s Opp'n 17), which has already been considered and rejected above.

previously withheld in bad faith.[10]   Accordingly, the Court accepts and credits the Plaintiff's

undisputed evidence that she could not afford to pay the tuition.  (*See* Pl.'s Decl. & Ex. 1

(indicating an annual income of less than $7,000 and lack of child support from the Student's

father).)  Therefore, the Court exercises its discretion under 20 U.S.C. § 1415(i)(2)(C)(iii) to

grant Plaintiff relief in the form of a direct payment of $44,500 from DOE to Cooke.

## CONCLUSION

For the foregoing reasons, the Court affirms the SRO's finding that that Cooke was an

appropriate private placement for the Student but reverses the SRO's decision that equitable

considerations weighed against granting Plaintiff's claim for relief.  Accordingly, Plaintiff's

motion for summary judgment is granted and Defendant's motion for summary judgment is

denied.  The Clerk of Court is ordered to enter judgment and close this case.


Dated: New York, New York
       September 23, 2013

                                                    SO ORDERED


                                                    _____
                                                    PAUL A. CROTTY
                                                    United States District Judge


---

[10] The Court also notes that this evidence has nothing to do with the merits of the Plaintiff's claims that the Student was denied a FAPE or that her placement at Cooke was educationally appropriate.  It is merely a means of income verification for the Court to consider when exercising its discretion in fashioning a remedy for a violation that the Court has found entirely on the basis of the administrative record.  It was also not strictly necessary: common sense would suggest that as a resident of a neighborhood in the South Bronx that is one of the poorest in New York City, she could not afford to pay $44,500 in annual tuition at Cooke.  (See Pl.'s Ex. J at 1 (listing her home address on the DOE's IEP).)  Presumably, the DOE—as the City's agency responsible for schooling in that area—is aware of this.